Edward J. Greenfield, J.
In this action to recover on four notes, the plaintiff moved for summary judgment at the time of the service of the summons under CPLR 3213. Summary judgment was denied. In its memorandum Special Term stated: “ The defendant establishes that plaintiff is not a holder in due course of the notes in question (Uniform Commercial Code, Sec. 3-302(3) (c) and asserts defenses which would thus be good against plaintiff.”
When the matter came on for trial before me, defendant insisted that the ruling of Special Term, which had never been appealed, stood as the law of the case, and that it having been ‘ ‘ established ’ ’ that plaintiff was not a holder in due course, he could not prove otherwise on the trial.
What we call ‘ ‘ the law of the case ” — a prior interlocutory ruling which, when unchallenged, is considered controlling throughout the balance of the litigation — is the pragmatic result of two salutary principles. They are that matters once litigated should not be endlessly relitigated, and that a Judge handling a subsequent aspect of a case should not, in disagreement with a prior ruling by a colleague, sit in appellate review of a Judge of concurrent jurisdiction. (Mt. Sinai Hosp. v. Davis, 8AD 2d 361; Graham v. Board of Supervisors, 25 A D 2d 250.) Of course, a Judge passing on the earlier stages of a case owes a reciprocal duty to those who come after him to decide no more than what is essential for disposition of the issue before him, and to be prudent and circumspect in the choice of language he adopts, for litigants are apt to put more weight and stress on provisional judicial structures than they are designed to bear.
A Judge who has a motion for summary judgment before him *329 ordinarily need pass on only one issue — are issues of fact presented which necessitate a trial, or are there not. “ Issue-finding, rather than issue-determination, is the key to the procedure.” (Esteve v. Abad, 271 App. Div. 725, 727.)
Denial of a motion for summary judgment, then, has been held not to establish the law of the case. (Frederick v. Siegler, 22 A D 2d 972; Snelwar v. Snelwar, 27 Misc 2d 933, 934.) Denial establishes merely that a line of defense is “ arguable ”. (Sillman v. Twentieth Century-Fox, 3 N Y 2d 395, 404; 5 CarmodyWait, New York Practice, p. 169.)
However, CPLR 3212 (subd. [g]) introduced a new element to what had been considered well-established law. Modeled on the Federal rule, it provided that even if a motion for summary judgment were denied, the court should, for the purposes of limiting the issues for trial; “ ascertain what facts are not in dispute or are incontrovertible ’ ’ and ‘1 thereupon make an order specifying such facts and they shall be deemed established for all purposes in the action.” The Appellate Division of this Department has declared: ‘ ‘ The determination by the court on a summary judgment motion of pivotal and controlling issues of law not tied in with disputed facts will ‘ aid in the disposition of the action’ (see CPLR 3212, subd. [g]). So utilized, the partial summary judgment procedure affords the opportunity of promptly settling issues which can be disposed of as a matter of law, and furthermore, furnishes a means for the withdrawing from the case of sham and feigned issues of fact and of law which might have a tendency to confuse and complicate the trial. Thereby, some constructive results may be salvaged from the judicial efforts expended on a motion for summary judgment.” (Janos v. Peck, 21 A D 2d 529, 531.)
Thus, while the prior doctrine that denial of summary judgment establishes no law of the case might appear to be somewhat modified, we must give a denial no greater weight than heretofore unless it clearly appears that some issues in the case are incontrovertible, and Special Term has expressly declared not that issues are existent, but that they have been eliminated. (See, e.g., Cooper v. Mallory, 51 Misc 2d 749; Hering v. Town of Canandaigua, 52 Misc 2d 98.)
In this case, on the prior motion plaintiff contended no issues could be raised as to its rights as a holder to collect on the notes in suit from defendant, the maker. Defendant argued that the payee of the notes had made an assignment for the benefit of creditors, and had assigned the notes to plaintiff as part of a bulk transfer, as a result of which plaintiff did not enjoy the status of a holder in due course, and a defense of breach of con *330 tract by the payee could be asserted against him. While reference to the assignment for the benefit of creditors by the payee was made, this was potentially misleading, for it did not appear that the notes in suit were transferred to plaintiff as a result of that assignment. Nevertheless an issue was raised as to whether that transfer was in the regular course of business. In denying the motion for summary judgment the Judge at Special Term used unfortunate language, and stated ‘1 defendant establishes that plaintiff is not a holder in due course ” (emphasis added) —verbiage both conclusive and adjudicatory, when all that the motion papers could warrant would be a statement that ‘ ‘ defendant asserts (and raises an issue) that plaintiff is not a holder in due course.” I find that such a semantic slip by one of my learned brethren must have been inadvertent, was not bottomed on the papers before him, and may in no sense be treated as the law in the case so as to preclude the trial court from an actual exploration of the issues.
On the trial plaintiff produced four unpaid notes of the defendant indorsed by the payee in blank, and rested. He was entitled to a recovery unless defendant proved a defense. (Uniform Commercial Code, § 3-307, subd. [2].) Defendant proved the notes were given as part of an agreement under which it was to receive a franchise for the sale of certain merchandise, and that none of the merchandise was ever delivered by the payee. This would be a good defense unless plaintiff established that he was a holder in due course. (Uniform Commercial Code, § 3-307, subd. [3].)
Plaintiff thus had the burden of proving that he took the notes for value, in good faith, and without notice of any infirmity. (Uniform Commercial Code, § 3-302, subd. [1].) Subdivision (3) provides that one does not become a holder in due course if the instrument has been purchased “ as part of a bulk transaction not in regular course of business of the transferor ”.
The evidence revealed that plaintiff, who was in the business of discounting notes, bought the four notes in suit, together with many others, from Brody, Williams & Son, Inc., the payee. Brody, Williams & Son, Inc., was in the wholesale jewelry business, promoting a brand-name line of gold rings and auxiliary sales aids. As part of its business, it would designate retail jewelers, such as defendant, to handle its line. When the retail jewelers gave notes in payment for the franchise and purchases of merchandise, Brody, Williams would accumulate such notes, and approximately once each week would discount all its notes on hand with plaintiff. Thus, the record shows, on September 17, *331 1964 plaintiff purchased 65 such notes from Brody, Williams; on September 25, 49 notes; on October 6, 22 notes (including three of those in suit); on October 13, 38 notes (including the last note here sued upon); and on October 21, 27 notes. Shortly thereafter, Brody, Williams made an assignment for the benefit of creditors.
This transfer of a substantial number of notes, which defendant speculates must have been in contemplation of going out of business, is the “bulk transaction” which defendant claims bars plaintiff from acquiring the status of holder in due course.
Whether or not there has been a bulk transaction not in the regular course of business turns upon the facts of the particular case. (New York Credit Men’s Assn. v. Domestic Broadtail Producers, 61 F. Supp. 102.) The transfer of a large number of similar items at the same time does not, of itself, put a purchaser on notice of any defects. Defendant concedes that if the payee negotiated each of the notes on separate days, there would be no basis for any challenge of the purchaser’s status as a holder in due course. Why should it be any different if the payee groups these notes, and together with notes he has accumulated from other sources, negotiates them all on one particular day? The fact that the four notes in suit were sold to plaintiff along with others is, standing alone, of no consequence. The controlling consideration is not a quantitative one, but whether circumstances indicate the transaction was in the regular course of business.
When there has been a bulk transfer incident to the liquidation of a going enterprise — an assignment for the benefit of creditors, a bankruptcy, a foreclosure sale, an auction or execution sale — or a transfer of a business of which the instruments represent part of the assets transferred, or a transfer by way of gift, then the transferee acquires no more protected interest than the transferor had. But when, in the course of an ongoing business there is a substantial transfer as a matter of regular commercial dealing, the purchaser is not put on notice that the paper transferred is not fully and freely negotiable.
The controlling principles are not dissimilar to those applicable to bulk transfers of merchandise. ‘ ‘ Where a going mercantile business is so conducted that to be profitable large quantities of goods must be sold to different customers, even to the extent of exhausting the entire stock which may be on hand at any stated time, such a sale is not voidable although all the stock in the seller’s possession at the time may be delivered to a single buyer. The statutory test is whether the sale was made in the usual way in which a merchant owing debts conducts his *332 business, or whether he takes an unusual method of disposing of his property in order to get the money for his own use, and leaving his creditors unpaid.” (Hart v. Brierly, 189 Mass. 598, 601. See, also, Sternberg v. Rubenstein, 305 N. Y. 235.)
In this case, it was the usual course of plaintiff’s business to purchase quantities of notes, and it appears to have been in the usual course of the transferor’s business to accept notes from its customers — retail jewelry dealers — in payment of their obligations, and to discount all the notes it received once a week with plaintiff, making available immediate cash funds for use in the business. In today’s business world, merchants in every field discount their notes in quantity to give themselves liquidity. This is the regular course of business, and those who take such notes and make ready cash available are not precluded from the status of holders in due course.
Apart from demonstrating that plaintiff took these notes along with many others, there is no showing he was aware of the payee’s impending financial difficulties. Indeed he himself took a note of which Brody, Williams & Son, Inc., was the maker, substantial in amount, a week after defendant’s notes were sold to him.
I find all the notes to have been transferred in the ordinary course of business, and that plaintiff is a holder in due course. Accordingly, such defenses as defendant may have against the payee are unavailing as against plaintiff.
Judgment for plaintiff in the sum of $400, together with appropriate interest and costs.